People v Matos (2022 NY Slip Op 04984)

People v Matos

2022 NY Slip Op 04984

Decided on August 17, 2022

Appellate Division, Second Department

Rivera, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on August 17, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

BETSY BARROS, J.P.
REINALDO E. RIVERA
PAUL WOOTEN
DEBORAH A. DOWLING, JJ.

2019-03845

[*1]The People of the State of New York, respondent,
v
David Matos, appellant.

APPEAL by the defendant from an order of the Supreme Court (Vincent M. Del Giudice, J.), dated April 2, 2019, and entered in Kings County, which, after a hearing, designated him a level three sex offender pursuant to Correction Law article 6-C.

Patricia Pazner, New York, NY (Anna Kou of counsel), for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove and Anthea H. Bruffee of counsel), for respondent.

RIVERA, J.

OPINION & ORDER
On the instant appeal, we address for the first time in this Court whether a defendant may challenge his or her certification as a sex offender under the Sex Offender Registration Act (Correction Law article 6-C; hereinafter SORA) on an appeal from an order designating the risk level. We answer that question in the negative and hold that such a challenge is properly made on an appeal from the judgment of conviction. Thus, the defendant's contention that his certification was unlawful because the crime he was convicted of is not a sex offense under Correction Law § 168-a(2) is not reviewable on this appeal.
I. Relevant Facts
On February 18, 2010, at approximately 3:30 p.m., the defendant, posing as a nurse, appeared at the residence of a first victim (hereinafter the first victim). He advised the first victim that he had reviewed her medical records and that, in order for her to continue to receive her medication, she would have to pay him money. He further stated that she would need to submit to a physical examination. The first victim laid on her bed. The defendant lifted her legs and placed both hands under her shirt, as if conducting a breast examination. The defendant then told her that he would also have to conduct a vaginal examination. The victim refused. The defendant proceeded to ask the first victim questions regarding her lifestyle and sexual activities. Additionally, he stated that he wanted to instruct her on "how to masturbate." The police viewed certain security video footage depicting the defendant exiting the first victim's residence.
On November 4, 2010, at approximately 12:30 p.m., the defendant, posing as an employee of the "Assistance/Medicaid" office, arrived at the residence of a second victim (hereinafter the second victim). Upon arriving at her residence, the defendant told the second victim that she needed to give him money. When she replied that she did not have any money, the defendant requested that the second victim provide him with her New York State benefit card and personal identification number, which she furnished to him. Thereafter, the defendant told the second victim that he needed to conduct a physical examination of her. After the second victim disrobed, the defendant placed his hands on her breasts, as if conducting a breast examination. He then proceeded to place latex gloves on his hands and inserted his fingers inside the second victim's vagina. He discarded the gloves. The defendant displayed a condom and told the second victim to go into the bathroom because he had to place his penis inside her vagina. The police were able to [*2]identify the defendant from DNA found on the latex gloves.
At the time that he committed the aforementioned offenses, the defendant was under parole supervision following convictions in 2005 of, inter alia, six counts of burglary in the second degree. Those 2005 convictions involved the defendant's impersonation of government personnel or employees of a home health-care agency in order to gain entry to the homes of those victims, many of whom were elderly. He demanded money, usually in the range of $70 to $100. On one occasion, he posed as a visiting nurse and told a home attendant that she had to submit to breast and vaginal examinations or she would "not have a job."
With regard to the acts committed by the defendant against the two victims herein, the defendant was charged, under Kings County Indictment No. 2995/11, with attempted rape in the third degree (Penal Law §§ 110.00, 130.25[3]), sexual abuse in the third degree (two counts) (id. § 130.55), attempted sexual misconduct (id. §§ 110.00, 130.20[1]), attempted sexual abuse in the third degree (id. §§ 110.00, 130.55), burglary in the second degree as a sexually motivated felony (id. §§ 140.25[2], 130.91), burglary in the third degree as a sexually motived felony (two counts) (id. §§ 140.20, 130.91), burglary in the second degree (two counts) (id. § 140.25[2]), burglary in the third degree (two counts) (id. § 140.20), grand larceny in the fourth degree (two counts) (id. § 155.30[4], [5]), criminal trespass in the second degree (two counts) (id. § 140.15), petit larceny (id. § 155.25), criminal impersonation in the second degree (two counts) (id. § 190.25[2]), scheme to defraud in the second degree (id. § 190.60[1]), attempted grand larceny in the fourth degree (id. §§ 110.00, 155.30[5]), attempted petit larceny (id. §§ 110.00, 155.25), harassment in the second degree (two counts) (id. § 240.26[1]), and trespass (two counts) (id. § 140.05).
On November 30, 2012, the defendant entered a plea of guilty to one count of burglary in the second degree as a sexually motivated felony (id. §§ 140.25[2], 130.91), in full satisfaction of the indictment. He was later sentenced to a determinate term of imprisonment of 9 years, to be followed by a period of postrelease supervision of 15 years. It is not disputed that, at sentencing, the Supreme Court certified the defendant as a sex offender under SORA. The defendant did not appeal from the judgment.
On April 2, 2019, a SORA hearing was conducted. The People requested that the defendant be designated a level three sex offender based on a total risk factor score of 135. The defendant opposed the assessment of points under certain risk factors and requested a downward departure to a level two category. At the hearing, defense counsel did not challenge the defendant's certification as a sex offender.
In an order dated April 2, 2019, the Supreme Court designated the defendant a level three sex offender. The defendant now appeals from that order.
II. Certification as a Sex Offender Is Not Reviewable on this Appeal from an Order Designating Him a Level Three Sex Offender
On appeal, the defendant contends that he was erroneously required to register as a sex offender because his conviction of burglary in the second degree as a sexually motivated felony is not a "[s]ex offense" under Correction Law § 168-a(2). He asserts that this issue is appropriately raised on this appeal. Alternatively, he argues that defense counsel was ineffective for failing to raise this issue at the SORA hearing. Notably, on the instant appeal, the defendant does not challenge the Supreme Court's assessment of points under any of the risk factors, the denial of his request for a downward departure from the presumptive risk level, or the level three sex offender designation.
The People counter that sex offender certification is part of the judgment of conviction and the defendant's contention that the crime of which he was convicted is not a "SORA-registrable" offense should have been raised on a direct appeal from the judgment. The People assert that such a challenge is not reviewable on this appeal from the order designating the defendant's SORA risk level.
For the reasons now discussed, we hold that the defendant's challenge to the legality of his sex offender certification is not reviewable on this appeal from an order designating the defendant's SORA risk level. Our analysis is guided by the express holdings of the Court of Appeals, this Court, and other appellate courts, as well as the statutory framework of SORA.
The stated purpose of SORA "is predominantly regulatory" (State Memo in Support, Bill Jacket, L 1995, ch 192 at 6; see People v Stevens, 91 NY2d 270, 274-275; People v Corr, _____ AD3d _____, 2022 NY Slip Op 04183 [2d Dept]; People v Wells, 138 AD3d 947, 951). "The Legislature's goals are to protect the public from the danger of recidivism posed by sex offenders, to assist the criminal justice system to identify, investigate, apprehend[,] and prosecute sex offenders, [*3]and to comply with the Federal Crime Control Act" (People v Stevens, 91 NY2d at 275 [internal quotation marks omitted]; see People v Perez, 35 NY3d 85, 87; People v Mingo, 12 NY3d 563, 574). Pursuant to Correction Law § 168-d(1)(a), the court shall certify that the person is a sex offender based upon his or her conviction of certain enumerated offenses set forth in Correction Law § 168-a(2) and (3), and shall include the certification in the order of commitment, if any, and the judgment of conviction (see People v Parris, 153 AD3d 68, 77; People v Vere, 44 AD3d 690, 691). Sex offender certification pursuant to Correction Law § 168-d(1) is distinct from a risk level determination (see Correction Law § 168-n; People v Smith, 60 AD3d 580, 581).
More than two decades ago, in People v Hernandez (93 NY2d 261, 267), the Court of Appeals concluded that certification as a sex offender is appealable and reviewable as part of the judgment of conviction. Therein, the Court of Appeals explained that certification is "rendered in open court, together with other elements of disposition" and "form[s] an integral part of the conviction and sentencing" (id. at 267). The Court of Appeals indicated that SORA certification is effected by operation of law upon "conviction," is pronounced at sentencing, and must be included in the order of commitment for those defendants sentenced to prison, "making the SORA certification an inescapable part of the conviction" and "definitionally incorporated within the judgment itself" (id. at 269 [emphasis added]).
Following Hernandez, the Court of Appeals has consistently reaffirmed that certification as a sex offender under SORA is appealable as part of the judgment of conviction (see e.g. People v Smith, 15 NY3d 669, 674; People v Nieves, 2 NY3d 310, 314-315; People v Kearns, 95 NY2d 816, 818).
In People v Buyund (179 AD3d 161, revd on other grounds 37 NY3d 532, on remand 205 AD3d 729), a case that is elucidative, the defendant was convicted of burglary in the first degree as a sexually motivated felony. As part of the judgment of conviction, the defendant was certified as a sex offender pursuant to SORA. On his appeal from the judgment of conviction, the defendant contended, inter alia, that his certification as a sex offender was unlawful because the crime of which he was convicted is not an enumerated registerable offense under Correction Law § 168-a(2)(a). The People contended that this argument was unpreserved for appellate review and, in any event, without merit.
In an opinion and order dated November 13, 2019, this Court concluded that the defendant's certification as a sex offender was unlawful, and that this issue fell within the exception to the preservation rule for challenges to unlawful sentences (see People v Buyund, 179 AD3d at 169-170). Accordingly, this Court modified the judgment by vacating the provisions thereof requiring the defendant to register as a sex offender and pay the $50 sex offender registration fee (see id. at 171).
The People sought leave to appeal to the Court of Appeals, and their application was granted. In an opinion dated November 23, 2021, the Court of Appeals concluded that "SORA certification is not a part of a defendant's sentence" (People v Buyund, 37 NY3d at 541). In Buyund, the Court of Appeals explained that sex offender certification is effectuated by the court pursuant to Correction Law § 168-d and is not addressed in either the Criminal Procedure Law or Title E of the Penal Law (see People v Buyund, 37 NY3d at 539). Certification for a defendant sentenced to a term of imprisonment is the initial step in a procedure under the SORA statutory scheme that is handled by prison officials, the Division of Criminal Justice Services, and the Board of Examiners of Sex Offenders (see id.). Moreover, the Court of Appeals reiterated that SORA and Mental Hygiene Law article 10, also known as the Sex Offender Management and Treatment Act, are remedial civil statutes and not punitive in nature (see id.). Thus, the Court of Appeals held that a contention regarding sex offender certification does not fall within the exception to the preservation rule for challenges to unlawful sentences (see id. at 537-541).
In Buyund, the Court of Appeals noted that, although it does not have interest of justice jurisdiction to review unpreserved issues, the "Appellate Division may have authority to take corrective action in the interest of justice based upon defendant's unpreserved challenge to the legality of his certification as a sex offender" (id. at 541). Accordingly, the Court remitted the matter to this Court for further proceedings (see id.). Upon remittitur, this Court reached the defendant's unpreserved contention in the exercise of our interest of justice jurisdiction (see CPL 470.15[3][c]; [6][a]), and determined that the defendant's certification as a sex offender was unlawful (see People v Buyund, 205 AD3d at 731).
Significantly, the procedural posture presented in Buyund was vastly different from [*4]that now before this Court. Specifically, the defendant in Buyund challenged the legality of his certification as a sex offender on an appeal from the judgment of conviction (see People v Buyund, 179 AD3d at 161; see also People v Simmons, 203 AD3d 106 [on an appeal from a judgment, the Appellate Division, First Department, held that assault in the first degree as a sexually motivated felony is not a registerable offense under SORA]).
Neither this Court, nor the Court of Appeals, has addressed whether a defendant's challenge to his sex offender certification is reviewable on an appeal from an order designating his SORA risk level. That issue, however, has been decided by the Appellate Division, First Department, in People v Miguel (140 AD3d 497). In Miguel, our sister appellate court held that an appeal from a risk level determination "does not bring up for review [a] defendant's claim that his underlying New York felony conviction was not for an offense requiring registration as a sex offender. Sex offender certification is part of the judgment of conviction, and the proper occasion for defendant to have challenged that certification was on an appeal from the judgment" (id. at 497, citing People v Hernandez, 93 NY2d at 267; see People v Gonzalez, 157 AD3d 409; People v Lema, 157 AD3d 406, 408).
Consistent with the First Department's holding in Miguel, we take this opportunity to pronounce that where, as here, a defendant challenges certification on the ground that the underlying New York conviction is for an offense which does not require registration under SORA, the issue is one which is properly raised on a direct appeal from the judgment of conviction, not on an appeal from an order designating his or her sex offender risk level.
Both the factual and legal basis for the challenge (i.e., the offense of conviction and the relevant statutory language) are known to the defendant at the time the judgment of conviction is rendered. Permitting a defendant to challenge the certification for the first time on an appeal from the order designating his or her sex offender risk level would be tantamount to providing him or her with an alternative to direct appeal (cf. CPL 440.10[2][c]; [3][a]; People v Brown, 13 NY2d 201, 204 ["The writ of error coram nobis, as we have repeatedly observed, is 'an emergency measure born of necessity to afford a defendant a remedy against injustice when no other avenue of judicial relief is, or ever was, available to him.' . . . [i]t is not a substitute for an appeal or for a motion in arrest of judgment or for a motion for a new trial and, if any one of these procedures was, or could have been, invoked, the defendant may not thereafter seek to set aside a judgment of conviction by resorting to coram nobis" (citation and emphasis omitted)]; People v Campbell, 148 AD3d 821, 821-822 [where the facts relevant to the defendant's contentions appear in the record of the direct appeal such issues should be raised on direct appeal]; People v Gutierrez, 57 AD3d 1006, 1007 [affirming denial of post-judgment relief where facts supporting defendant's contention were known and should have been placed on the record during trial; motion for postjudgment relief should not "be employed as a substitute for direct appeal" (internal quotation marks omitted)]; People v Donovon, 107 AD2d 433, 443 [postjudgment relief "cannot be used as a vehicle for an additional appeal or a substitute for a direct appeal. Rather, postjudgment proceedings are viewed as an emergency measure to afford a defendant a remedy when no other judicial relief is, or ever was, available to him" (citations omitted)]).
In support of his contention that sex offender certification is reviewable on appeal from a risk level determination, the defendant primarily relies on three cases: People v Liden (19 NY3d 271), People v Marke (144 AD3d 651), and People v Baluja (109 AD3d 803), all of which are inapposite.
The Court of Appeals decision in Liden does not stand for the broad proposition that a SORA court has the authority to decide any and all questions of registrability. Instead, the Court in Liden held that where the Board of Examiners of Sex Offenders determines that a person who committed an offense in another state must register in New York, disputes regarding "registrability can be considered in the risk level proceeding" (People v Liden, 19 NY3d at 276; see People v Diaz, 32 NY3d 538). The Court in Liden clearly stated that its determination was based on considerations of efficiency and public policy presented by the "unique" procedures for determining registrability based on an out-of-state conviction (People v Liden, 19 NY3d at 276).
Similarly, this Court's decisions in Baluja and Marke do not address the reviewability issue presented herein. In Baluja, this Court held that "pursuant to SORA, a defendant's obligation to register as a sex offender based upon a New York conviction is determined by the court, not the Board of Examiners of Sex Offenders[,] and[ ] thus, the registrability issue in this context does not give rise to an administrative determination which could be subject to review in a CPLR article 78 [*5]proceeding" (People v Baluja, 109 AD3d at 803). Likewise, this Court's decision in Marke did not address the issue of reviewability, as neither the parties nor this Court addressed the question of whether the defendant's appeal of his sex offender certification was properly before the Court. Moreover, to the extent that this Court's decision in Marke can be viewed as implicitly determining the question of reviewability, Marke is distinguishable from the present case. The defendant in Marke was convicted of unlawful surveillance in the second degree under Penal Law § 250.45(2) (see People v Marke, 144 AD3d 651). Pursuant to Correction Law 168-a(2)(e), such a conviction is a registrable offense "unless upon motion by the defendant, the trial court, having regard to the nature and circumstances of the crime and to the history and character of the defendant, is of the opinion that registration would be unduly harsh and inappropriate" (People v Marke, 144 AD3d at 652 [internal quotation marks omitted]). Thus, Marke involved a provision of the Correction Law which expressly permits a secondary review of the propriety of a defendant's registration, upon a motion by the defendant. Accordingly, to the extent that this Court's decision in Marke determined that such a motion may be properly addressed to the SORA hearing court, it should not be read to find that any and all challenges to registrability are properly addressed to the SORA hearing court and reviewable on appeal from the risk level determination issued by the hearing court.
Very recently, in People v David (203 AD3d 739), this Court reversed a resentence, and denied that branch of the defendant's motion which was pursuant to CPL 440.20 to set aside so much of a sentence as certified him as a sex offender on the ground that his certification was unlawful because the crime he was convicted of was not a sex offense or a sexually violent offense under Correction Law § 168-a. This Court reemphasized that while a defendant's certification as a sex offender under SORA is part of the judgment of conviction, SORA certification is not part of a sentence. Thus, the relief sought by the defendant in David was not available to him under CPL 440.20(1), which only authorizes a motion to set aside a sentence (see People v Lisle-Cannon, 31 AD3d 467, 468).
The defendant's remaining contention, that defense counsel was ineffective for failing to argue at the SORA hearing that his conviction did not constitute a registrable sex offense under SORA, is without merit (see generally Strickland v Washington, 466 US 668; People v Benevento, 91 NY2d 708). A defendant has a right to the effective assistance of counsel in a SORA proceeding (see People v Collins, 156 AD3d 830, 830; People v Willingham, 101 AD3d 979, 979; People v Bowles, 89 AD3d 171, 173). Under the federal ineffective assistance of counsel standard, the defendant must satisfy a two-pronged test in order to establish that counsel was ineffective: (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (Strickland v Washington, 466 US at 688, 694; see People v Wolbert, _____ AD3d _____, 2022 NY Slip Op 04313 [2d Dept]). Under the New York standard, the first prong is identical to its federal counterpart, but the second prong is based on the fairness of the process as a whole rather than the impact of counsel's errors on the outcome of the case (see People v Capasso, 203 AD3d 1085; People v Georgiou, 38 AD3d 155, 160-161). "So long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met" (People v Baldi, 54 NY2d 137, 147; see People v Wright, 25 NY3d 769, 779; People v Benevento, 91 NY2d at 712).
For the reasons set forth herein, the defendant's challenge to his sex offender certification is not subject to review on this appeal from the order designating his risk level. Thus, defense counsel cannot be assailed for failing to challenge the SORA certification at the SORA hearing (see People v Caban, 5 NY3d 143, 152; see also People v Miguel, 140 AD3d at 497 ["Since the issue is one of reviewability by this Court, it is of no moment that the SORA hearing court and the parties engaged in the essentially academic exercise of litigating the issue of whether defendant was required to register as a sex offender, an issue that had necessarily been decided at his sentencing"]).
III. Conclusion
The defendant's contention that his conviction of burglary in the second degree as a sexually motivated felony is not a registrable sex offense under Correction Law § 168-a(2) is not reviewable on this appeal from an order designating the defendant's SORA risk level.
Accordingly, the order is affirmed.
BARROS, J.P., WOOTEN and DOWLING, JJ., concur.
ORDERED that the order is affirmed, without costs or disbursements.
ENTER:
Maria T. Fasulo
Clerk of the Court